UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| StandWithUs Center for Legal Justice, Katerina Boukin, and Marilyn Meyers,<br><br>  Plaintiffs,<br><br>v.<br><br>Massachusetts Institute of Technology,<br><br>  Defendant. | Case No. 24-CV-10577-RGS<br><br>Filed with Leave of Court |

**REPLY IN FURTHER SUPPORT OF
DEFENDANT MASSACHUSETTS INSTITUTE OF TECHNOLOGY'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

    I.     The Title VI Deliberate Indifference Claim Should be Dismissed ..................................... 1

    II.    The Section 1986 Claim Should Be Dismissed. .................................................................. 4

    III.   The State Law Claims Should Be Dismissed ...................................................................... 7

    IV.   SCLJ Lacks Standing Entirely And No Plaintiff Has Injunctive-Relief Standing ..................................................................................................................................... 9

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**

*Alston v. Spiegel*, 988 F.3d 564 (1st Cir. 2021) ................................................................. 6

*Aziz v. FedEx Ground Package System, Inc.*, No. 4:18-CV-00245, 2019 WL 636972 (E.D. Tex. Feb. 14, 2019) ..................................................................................... 6

*Boston Parent Coalition for Academy Excellence Corp. v. School Committee for City of Boston*, 89 F.4th 46 (1st Cir. 2023) .................................................................. 10

*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 264 (1993) ..................................... 5

*Brown v. Suffolk University*, No. 19-CV-40062, 2021 WL 2785047 (D. Mass. Mar. 31, 2021) ........................................................................................................ 7

*Canty v. Old Rochester Regional School District*, 66 F. Supp. 2d 114 (D. Mass. 1999) ............................................................................................................. 2

*Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142 (D. Mass. 2011) ..................... 10

*Czerwienski v. Harvard University*, 666 F. Supp. 3d 49 (D. Mass. 2023) ........................ 8

*Davis ex rel. LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629 (1999) .................................................................................................... 2, 3, 8, 10

*Doe v. Purdue University*, 464 F. Supp. 3d 989 (N.D. Ind. 2020) .................................... 4

*Doe v. School Administrative District No. 19*, 66 F. Supp. 2d 57 (D. Me. 1999) ............. 3

*Doe v. School Board of Broward County*, 604 F.3d 1248 (11th Cir. 2010) ..................... 3

*Doe v. University of Tennessee*, 186 F. Supp. 3d 788 (M.D. Tenn. 2016) ..................... 10

*Doherty v. Emerson College*, No. 1:14-CV-13281, 2017 WL 4364406 (D. Mass. Sept. 29, 2017) ................................................................................................ 9

*Felber v. Yudof*, 851 F. Supp. 2d 1182 (N.D. Cal. 2011) .................................................. 3

*Feminist Majority Foundation v. Hurley*, 911 F.3d 674 (4th Cir. 2018) .......................... 2

*Forth v. Laramie County School District No. 1*, 85 F.4th 1044 (10th Cir. 2023) ............ 3

*Garrett v. Tandy Corp.*, 295 F.3d 94 (1st Cir. 2002) ......................................................... 5

*Grace v. Board of Trustees*, 85 F.4th 1 (1st Cir. 2023) .................................................... 2

*Karasek v. Regents of University of California*, 956 F.3d 1093 (9th Cir. 2020) ............. 4

*Libertad v. Welch*, 53 F.3d 428 (1st Cir. 1995) ................................................................. 5

*Monsarrat v. Newman*, 514 F. Supp. 3d 386 (D. Mass. 2021) ......................................... 1

*Monteiro v. Tempe Union High School District*, 158 F.3d 1022 (9th Cir. 1998) ........... 3

*Mullins v. Pine Manor College*, 449 N.E.2d 331 (Mass. 1983) ....................................... 8

*National Ass'n of Governmentt Employees v. Mulligan*, 914 F. Supp. 2d 10 (D. Mass. 2012) ................................................................................................................. 9

*New Hampshire Motor Transport Ass'n v. Rowe*, 448 F.3d 66 (1st Cir. 2006) .............. 9

*Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18 (1st Cir. 2007) .................... 10

*Patricia H. v. Berkeley Unified School District*, 830 F. Supp. 1288 (N.D. Cal. 1993) ............................................................................................................................. 4

*Phillip v. University of Rochester*, 316 F.3d 291 (2d Cir. 2003) ...................................... 5

*Plourde v. Sorin Group USA, Inc.*, 23 F.4th 29 (1st Cir. 2022) ......................................... 9

*Pocono Mountain Charter School v. Pocono Mountain School District*, 908 F. Supp. 2d 597 (M.D. Pa. 2012) ................................................................................. 10

*Ruffino v. State Street Bank & Trust Co.*, 908 F. Supp. 1038 (D. Mass. 1995) ............. 10

*Schaefer v. Fu*, 272 F. Supp. 3d 285 (D. Mass. 2017) ..................................................... 8

*Sexual Minorities Uganda v. Lively*, 960 F. Supp. 2d 304 (D. Mass. 2013) ................. 10

*Shulse ex rel. Shulse v. Western New England University*, No. 3:19-CV-30146, 2020 WL 4474274 (D. Mass. Aug. 4, 2020) ............................................................... 8

*Timothy B. v. Kinsley*, No. 1:22-CV-1046, 2024 WL 1350071 (M.D.N.C. Mar. 29, 2024) ......................................................................................................................... 10

*United States v. Brown*, 49 F.3d 1162 (6th Cir. 1995) ..................................................... 6

*United States v. Greer*, 939 F.2d 1076 (5th Cir. 1991) .................................................... 6

*Vance v. Spencer County Public School District*, 231 F.3d 253 (6th Cir. 2000) ............ 2

*Villanueva v. Wellesley College*, 930 F.2d 124 (1st Cir. 1991) ....................................... 5

*Wells v. Rhodes*, 928 F. Supp. 2d 920 (S.D. Ohio 2013) .................................................. 5

*Winthrow v. Clark*, No. 06-CV-11597, 2008 WL 8188363 (D. Mass. Aug. 15, 2008) ............................................................................................................................. 5

*Wu v. Ma*, No. 22-CV-30033, 2023 WL 6318831 (D. Mass. Sept. 28, 2023) ............................. 7, 8

*Zeno v. Pine Plains Central School District*, 702 F.3d 655 (2d Cir. 2012) ................................. 2, 3

**OTHER AUTHORITIES**

Office for Civil Rights, U.S. Dep't of Educ., Dear Colleague Letter (May 7, 2024)
    https://bit.ly/3z1ySeg ........................................................................................................ 7

## INTRODUCTION

Plaintiffs do not and cannot allege what binding precedent requires to sustain their extraordinary claim that MIT is deliberately indifferent to concerns of antisemitism: a "clearly unreasonable" response in the face of severe, pervasive, and objectively offensive harassment. MIT's robust and ongoing action stands in stark contrast to the abject institutional failures this narrow private right of action guards against. Based solely on the facts as alleged in the Amended Complaint and the materials it incorporates by reference, MIT's response is not "clearly unreasonable" as a matter of law.[1] Plaintiffs also fail to allege essential elements of their Ku Klux Klan Act claim that MIT was negligent in preventing a student-driven conspiracy against civil rights, a bald attempt to hold MIT vicariously liable for the actions of students in contravention of Supreme Court precedent. Nor can Plaintiffs evade the pleading requirements of federal antidiscrimination law by presenting their same theories as state common law claims. Finally, the California-based legal advocacy group driving this litigation lacks standing, and neither it nor the two students involved has a basis for the unprecedented injunctive relief demanded here.

## ARGUMENT

**I.    The Title VI Deliberate Indifference Claim Should be Dismissed.[2]**

The Supreme Court and First Circuit have established a high bar for pleading deliberate

---

[1] Plaintiffs suggest this Court should disregard public communications and websites their own pleading references, describes, and even quotes (Opp'n 9 n.6). But Plaintiffs do not seriously dispute the authenticity of those materials, and the law is clear that courts may consider exhibits to a motion to dismiss that "form the basis of (and thus are necessary to proper evaluation of) [the plaintiff's] claims." *Monsarrat v. Newman*, 514 F. Supp. 3d 386, 389 n.1 (D. Mass. 2021) (Stearns, J.).

[2] Plaintiffs do not defend, and therefore abandon, any theory of Title VI direct discrimination. To the extent Plaintiffs are now attempting to bring a "pattern or practice" theory as a separate claim (*see* Opp'n 2, 10, 12, 13), they neither plead it in the Amended Complaint nor cite a single case recognizing that theory in a Title VI context.

1

indifference. Where, as here, it is undisputed that MIT is responding, Plaintiffs must allege actions so deficient that they are "clearly unreasonable" and amount to an official and intentional decision not to remedy harassment (MTD 9-14). The deliberate-indifference standard is not so prescriptive as to require funding recipients to "purg[e] their schools of actionable peer harassment or … engage in particular disciplinary action." *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999). Rather, it limits liability to the types of egregious mistakes alleged in the cases Plaintiffs cite (Opp'n 15-17). No such facts are alleged here.[3]

Plaintiffs also double down on their untenable position that Title VI requires institutions to stifle freedom of expression (Opp'n 20-21). To start, they contend that free-speech principles are irrelevant at private institutions, ignoring the settled view (expressed by the Department of Education's Office for Civil Rights for decades) that Title VI enforcement must respect free expression at public and private institutions alike (MTD 17-18). Next, Plaintiffs confuse two fundamentally different issues: whether it is *permissible* for institutions to regulate speech in specific contexts (as in their cited cases involving Section 1983 claims), versus whether it is *clearly unreasonable* under Title VI for institutions to respond to alleged harassment in ways that protect the free expression of their students (as Plaintiffs urge, with no legal authority). Last, Plaintiffs claim the "at issue conduct is not speech" (Opp'n 20 n.23), ignoring pages of their own allegations

---

[3] The cases Plaintiffs cite involve circumstances where school officials "[f]or more than a year … took no corrective or remedial action" in response to repeated harassment of the same child, *Grace v. Bd. of Trs.*, 85 F.4th 1, 12 (1st Cir. 2023); continued to employ a coach who raped a student and persisted in inappropriate sexual contact even after disciplined, *Canty v. Old Rochester Reg'l Sch. Dist.*, 66 F. Supp. 2d 114, 115-16 (D. Mass. 1999); refused any intervention other than informally speaking with the perpetrators despite their escalating physical harassment, *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 262 (6th Cir. 2000); failed to address repeated and targeted threats of rape and murder against particular students, *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 689-90 (4th Cir. 2018); and did not strengthen their response as years of harassment directed at a particular student worsened, *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 669-70 (2d Cir. 2012).

insisting that MIT should have shut down political speech about the Israel/Hamas conflict because Plaintiffs found it offensive. *See, e.g.*, AC ¶¶ 147, 150, 151, 288.

Plaintiffs also fail to allege actionable discriminatory harassment, and their cited cases only underscore how their allegations—which mainly involve email listserv communications and protest chants advocating for Palestinians and/or condemning the Israeli government (Opp'n 18 n.20)—are insufficiently "severe" and "pervasive."[4] Plaintiffs complain that MIT relies on cases in which "most conduct described was not actually proper for consideration in assessing the sufficiency of the alleged discrimination" (Opp'n 19). But that is exactly the point: the fact that some student allegedly experienced some harassment in some place at some time does not make those allegations relevant to the burden these specific Plaintiffs bear. As to their own experiences, Boukin and Meyers allege isolated encounters (AC ¶¶ 156, 297, 301, 355) that do not qualify as severe and pervasive under governing law and are not alleged to have "occur[red] in the context of [their] educational pursuits" or "denied [them] access to the University's educational services in any meaningful sense." *Felber v. Yudof*, 851 F. Supp. 2d 1182, 1188 (N.D. Cal. 2011). Nor do Plaintiffs provide any non-conclusory allegations that Boukin and Meyers reported the specific incidents they allege to MIT, such that MIT would have "actual knowledge" of the alleged harassment as Title VI requires. *Davis*, 526 U.S. at 650.[5]

---

[4] *See, e.g.*, *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1034 (9th Cir. 1998) (school children were called "the most noxious racial epithet in the contemporary American lexicon," which was also written on the walls of their classrooms); *Zeno*, 702 F.3d at 666-67 (for three and a half years, student was subjected to racial slurs, "frequent pejorative references to his skin tone," "explicit threats as well as implied threats, such as references to lynching," and "physical attacks").

[5] The cases Plaintiffs cite regarding notice all involve the vastly different circumstances of repeated sexual abuse by the same employee. *See Doe v. Sch. Admin. Dist. No. 19*, 66 F. Supp. 2d 57, 62-64 (D. Me. 1999); *Forth v. Laramie Cnty. Sch. Dist. No. 1*, 85 F.4th 1044, 1048-51 (10th Cir. 2023); *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1250-53 (11th Cir. 2010).

Finally, given that Plaintiffs repeatedly criticize MIT's disciplinary response, MIT's point about ripeness is simple: Plaintiffs cannot ground a deliberate indifference claim on disciplinary proceedings that, as the pleading itself alleges, are ongoing and based on events within the last few months.[6] This is not a gambit by MIT to "wait out" claims. The law affords discretion to institutions to respond based on their expertise and judgment, constrained only by the outer boundary of clear unreasonableness. Of course, an institution could drag its feet for so long that the timing alone could render its response clearly unreasonable; but Plaintiffs have not pointed to any case holding that the "delay" alleged here comes remotely close. *See Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1106, 1109-10 (9th Cir. 2020).

## II.    The Section 1986 Claim Should Be Dismissed.

Plaintiffs' Section 1986 claim—unlike any case Plaintiffs cite—would hold a private party responsible for a conspiracy against civil rights even though that party had no alleged involvement in the underlying conspiracy. It fails for several reasons.

***First***, Plaintiffs fail to adequately allege the underlying Section 1985(3) conspiracy or the requisite conspiratorial purpose. With no legal support whatsoever, Plaintiffs insist they have pleaded a conspiracy by alleging that student groups coordinated to plan various protest activities (Opp'n 25). But as multiple courts have held in decisions Plaintiffs do not address (MTD 25-26), event-planning communications among alleged co-conspirators does not establish a "meeting of the minds" to deprive a group of its civil rights. Even more to the point, Plaintiffs confuse *intent* with *effect*. Even assuming the alleged conspiracy "had the practical effect of impeding the rights

---

[6] This commonsense conclusion is not refuted by *Doe v. Purdue University*, 464 F. Supp. 3d 989, 1000 (N.D. Ind. 2020), which involved a ripe claim by a student-respondent already adjudicated for discipline. Nor does *Patricia H. v. Berkeley Unified School District* help Plaintiffs: it did not involve an ongoing response and merely rejected an argument that the student's withdrawal from the school rendered her claim unripe. 830 F. Supp. 1288, 1298-99 (N.D. Cal. 1993).

4

of Jewish and Israeli students" (Opp'n 26), which MIT disputes, that does not establish the alleged co-conspirators intended such an effect: "impairment [of civil rights] must be a *conscious objective* of the enterprise." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 264, 275 (1993) (emphasis added). Plaintiffs do not even attempt to argue that standard is met here.[7]

***Second***, Plaintiffs acknowledge they must plead a predicate for the alleged conspiracy yet fail to do so. They abandon several of the predicates asserted in their Amended Complaint (Opp'n 27 & n.30), and none of the remaining predicates can sustain their claim. Even assuming the Thirteenth Amendment includes a right to be free from serious racial violence perpetrated by private parties, Plaintiffs have no answer to the case law establishing that serious racial violence requires far more than the nonviolent conduct and speech that is alleged here (MTD 23). *Winthrow v. Clark*, which did not involve a Thirteenth Amendment predicate at all, is not to the contrary. No. 06-CV-11597, 2008 WL 8188363, at *5 (D. Mass. Aug. 15, 2008). And while Plaintiffs insist that statutory predicates are cognizable under Sections 1981 and 1982 (Opp'n 26-27), they rely on out-of-circuit cases that acknowledge a split of authority on that question, *Wells v. Rhodes*, 928 F. Supp. 2d 920, 930 (S.D. Ohio 2013), and offer no decisions from the First Circuit endorsing the statutory predicates they proffer. Indeed, it would make no sense to recognize these statutory predicates when the Supreme Court has expressly rejected another statute, Title VII, as a predicate (MTD 24) and the First Court has repeatedly acknowledged that the analysis for Section 1981 (and in turn Section 1982) closely follows that of Title VII. *See, e.g.*, *Villanueva v. Wellesley Coll.*, 930 F.2d 124, 127 n.2 (1st Cir. 1991); *Garrett v. Tandy Corp.*, 295 F.3d 94, 103 (1st Cir. 2002).

At any rate, Plaintiffs have not adequately pleaded either Section 1981 or 1982 as a

---

[7] As for the cases cited by Plaintiffs: *Libertad v. Welch*, 53 F.3d 428, 446 (1st Cir. 1995) focused on the purpose of the alleged conspiracy, not just its effect; and *Phillip v. University of Rochester*, 316 F.3d 291, 293 (2d Cir. 2003), which was abrogated by *Twombly*, is simply inapposite.

5

predicate for the deprivation of rights they allege. Under Section 1981's contract clause, Plaintiffs have not alleged and cannot allege that plans by student groups to hold events in particular spaces created binding and enforceable contracts *at all*, nor do they explain how the alleged conspiratorial activity by *third parties* prevented Plaintiffs from making or enforcing contracts with *MIT*. *See Alston v. Spiegel*, 988 F.3d 564, 572-74 (1st Cir. 2021). Under Section 1981's equal benefit clause, which MIT contests is even available against private parties like MIT, Plaintiffs nowhere allege the "law or proceeding" at issue, and they rely exclusively on a case that *rejected* this claim and predicate for that very reason. *See Aziz v. FedEx Ground Package Sys., Inc.*, No. 4:18-CV-00245, 2019 WL 636972, at *6-7 (E.D. Tex. Feb. 14, 2019). As for Section 1982, Plaintiffs have no support for their contention that students have legal property rights in a campus center for Jewish life, and the cases upon which they rely involve acts of violence that are not alleged here. *See United States v. Greer*, 939 F.2d 1076, (5th Cir. 1991) (white supremacists violently vandalized a temple, including shooting out windows and doors and spray-painting swastikas and antisemitic slogans); *United States v. Brown*, 49 F.3d 1162 (6th Cir. 1995) (member of KKK fired several shots into a synagogue).

*Third*, Plaintiffs do not and cannot allege the knowledge and neglect Section 1986 requires. As to knowledge, Plaintiffs focus on the encampment (Opp'n 32), but knowledge that students were violating MIT time, place, and manner restrictions is not equivalent to knowledge that they were conspiring to deprive Plaintiffs of their civil rights. Similarly, knowledge that Jewish and/or Israeli students were offended by activity on campus is not equivalent to knowledge that such activity was unlawful, even if we assume actionable harassment (which MIT strongly disputes). Plaintiffs also suggest that opposition to Zionism is categorically discriminatory (Opp'n 32), a position for which they offer no legal authority and which the Education Department has pointedly

6

declined to endorse.[8] Ultimately, Plaintiffs condemn MIT because they subjectively believe its response was not "proactive or effective" (Opp'n 32). While MIT strenuously disputes that characterization, Plaintiffs' invented standard is not the test for Section 1986 (negligence) or Title VI (deliberate indifference).

### III. The State Law Claims Should Be Dismissed.

The Amended Complaint fails to state a claim for breach of contract because it does not identify any "definite and certain promises" that MIT breached. *Brown v. Suffolk Univ.*, No. 19-CV-40062, 2021 WL 2785047, at *6 (D. Mass. Mar. 31, 2021). Directly challenged by MIT to identify the basis for their claim (MTD 28-29), Plaintiffs first cross-reference an entire section of their pleading describing various MIT policies and procedures (Opp'n 33-34, citing AC ¶¶ 41-67), but fail to identify any specific policy language giving rise to a reasonable contractual expectation that MIT guaranteed "a welcoming community free from discrimination and discriminatory harassment." AC ¶ 423. Next, when Plaintiffs offer something more specific, namely two provisions supposedly demonstrating that "MIT promised to enforce such policies when violated" (Opp'n 34), the cited language completely refutes their theory. *See* AC ¶ 65 ("[A] representative of the Institute *may* request the conduct to stop or ask the person or group to leave the area" and "MIT *reserves the right* to take appropriate action"); *id.* ¶ 48 ("The outcome of disciplinary action *can* include a warning, probation, suspension, expulsion, or degree revocation."). While of course MIT, like all institutions, strives for a campus free from discrimination and harassment, case law sensibly recognizes that it retains "discretion to decide on an appropriate resolution method." *Wu v. Ma*, No. 22-CV-30033, 2023 WL 6318831, at *9 (D. Mass. Sept. 28, 2023).

---

[8] *See* Office for Civil Rights, U.S. Dep't of Educ., Dear Colleague Letter at 16-17 & n.34 (May 7, 2024), https://bit.ly/3z1ySeg.

Plaintiffs, moreover, fail to grapple with the broad ramifications of their theory (MTD 29-30). Under their view, every institution of higher education can be held liable in contract for policy statements and aspirational goals about the learning and living environments they strive to achieve. The law is exactly to the contrary: courts do not read an institution's "expectations regarding student behavior"—such as the MIT policies Plaintiffs cite (*see* Opp'n 34)—as making "specific promises about how [an institution] would respond if a student did not meet expectations." 2023 WL 6318831, at *9.[9] Plaintiffs cannot merely recast their insufficient Title VI claim as a claim under contract law (MTD 29).

Plaintiffs' negligence claim also fails under Massachusetts law. First, Plaintiffs do not cite a single case recognizing a duty of educational institutions to prevent any discrimination or harassment in the learning environment. AC ¶ 404. They rely on *Mullins v. Pine Manor College*, 449 N.E.2d 331, 336 (Mass. 1983), which concerned a residential college's duty to protect against criminal acts by intruders in residence halls, and *Schaefer v. Fu*, 272 F. Supp. 3d 285, 288-89 (D. Mass. 2017), discussing a university's duty to protect a specific student from physical harm after she reported to multiple faculty members behavior by another student that made his verbal and physical harassment of her foreseeable. Neither applies nor is remotely analogous here. Second, Plaintiffs offer no support for their extraordinary theory that Title VI—which contains no express private right of action and does not make institutions responsible for eradicating all peer harassment, *Davis*, 526 U.S. 629—created tort liability for any harassment on campus. That theory

---

[9] Neither case cited by Plaintiffs holds otherwise (Opp'n 34-35). In *Czerwienski v. Harvard University*, the court relied on "far more specific" provisions than general policy statements, including about particular "methods of investigation and resolution" for sexual harassment, 666 F. Supp. 3d 49, 100 (D. Mass. 2023) (internal quotation marks omitted); and in *Shulse ex rel. Shulse v. Western New England University*, the court relied on university representations beyond just a statement about an "environment free from discrimination," including specific commitments about disability-related services, No. 3:19-CV-30146, 2020 WL 4474274, at *9 (D. Mass. Aug. 4, 2020).

8

raises serious "federal preemption concerns" to which Plaintiffs have no answer. *See Doherty v. Emerson Coll.*, No. 1:14-CV-13281, 2017 WL 4364406, at *10 (D. Mass. Sept. 29, 2017).[10]

## IV. SCLJ Lacks Standing Entirely And No Plaintiff Has Injunctive-Relief Standing.

Plaintiffs do not dispute that SCLJ lacks standing to seek damages. As for injunctive relief, they misconstrue the "individual participation" bar to associational standing (Opp'n 10-11). Associational standing is not appropriate where adjudicating the merits "requires the court to engage in a 'fact-intensive-individual inquiry,'" which is frequently the case for discrimination claims. *Nat'l Ass'n of Gov't Emps. v. Mulligan*, 914 F. Supp. 2d 10, 13-14 (D. Mass. 2012) (quoting *N.H. Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 72 (1st Cir. 2006)). Although Plaintiffs fixate on whether individual participation is "indispensable" (Opp'n 10), they misconstrue this Circuit's straightforward test for when associational standing is not viable: when "member circumstances differ and proof of them is important." *Rowe*, 448 F.3d at 72. Under that standard, SCLJ lacks standing (MTD 32-33). Plaintiffs do not even attempt to explain how they could prove key elements of their claims—including whether the alleged circumstances interfered with any particular student's education program—without individual participation by the students, including their documents and testimony (*see also* MTD 33).

Plaintiffs cannot recast their claims as "pattern and practice" in order to minimize the intensely fact-specific and individualized nature of their claims (Opp'n 10-11). For one, there is no "pattern or practice" theory in this case, *see supra* at 1 n.1, and Plaintiffs have abandoned their disparate treatment theory, leaving only the deliberate indifference claim with its highly fact-intensive elements (MTD 32-33). The fact-specific claims Plaintiffs bring bear no resemblance to

---

[10] *Plourde v. Sorin Group USA, Inc.* is a non-sequitur: it concerned a preemption provision in the Food, Drug, and Cosmetic Act and involved coextensive state and federal requirements, not state duties that would vastly exceed requirements under federal law. 23 F.4th 29, 33 (1st Cir. 2022).

9

the cases they cite involving a facial challenge to an admissions policy where student-specific facts were "uncontested," *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. for City of Bos.*, 89 F.4th 46, 55 (1st Cir. 2023), or an inherently "group-based" claim for crimes against humanity under the Alien Tort Statute, which relies on evidence of "widespread, systematic persecution," *Sexual Minorities Uganda v. Lively*, 960 F. Supp. 2d 304, 310, 327 (D. Mass. 2013).[11]

Finally, the injunctive relief sought is fatally overbroad. The Amended Complaint's allegations, far from demonstrating that future injury is "certainly impending," demonstrate several steps MIT has taken—including disciplinary action, arrests, and clearing the encampment—that make such injury speculative at best. AC ¶¶ 125 n.73, 184, 238, 244; MTD Ex. 9. What is more, none of Plaintiffs' speculation about what might occur and how MIT might respond is tied to the two students in whose name this case has been filed, and neither student can demonstrate future harm *to them* by pointing to alleged experiences of other students not in the lawsuit. None of Plaintiffs' cases (Opp'n 12-13) endorse injunctions based on this type of speculation.[12]

## CONCLUSION

The Amended Complaint should be dismissed in its entirety and the case should be closed.

---

[11] Plaintiffs also overread *Timothy B. v. Kinsley*, an unpublished out-of-circuit decision that allowed associational standing because Congress expressly authorized the organization to sue and the claim (about systematically isolating and institutionalizing disabled foster children) did not turn on individualized proof. No. 1:22-CV-1046, 2024 WL 1350071, at *11-13 (M.D.N.C. Mar. 29, 2024).

[12] *Davis*, 526 U.S. 629 (1999), and *Ruffino v. State Street Bank & Trust Co.*, 908 F. Supp. 1038 (D. Mass. 1995), did not address standing at all; *Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 26-28 (1st Cir. 2007), and *Doe v. University of Tennessee*, 186 F. Supp. 3d 788, 812-14 (M.D. Tenn. 2016), addressed procedural rights of individuals who were parties to ongoing proceedings; and *Pocono Mountain Charter School v. Pocono Mountain School District*, 908 F. Supp. 2d 597, 615 (M.D. Pa. 2012), and *Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 151-53 (D. Mass. 2011), involved distinguishable allegations about institutional policies that affected all plaintiffs and did not endorse the breadth of injunctive relief sought here.

Dated: July 19, 2024

Respectfully submitted,

MASSACHUSETTS INSTITUTE OF TECHNOLOGY,

*/s/ Ishan K. Bhabha*
Ishan K. Bhabha (*pro hac vice*)
  IBhabha@jenner.com
  202.637.6327
Lauren J. Hartz (*pro hac vice*)
  LHartz@jenner.com
  202.637.6363
JENNER & BLOCK LLP
1099 New York Avenue, N.W., Suite 900
Washington, DC 20001-4412

and

Daryl J. Lapp (BBO No. 554980)
  daryl.lapp@lockelord.com
Elizabeth H. Kelly (BBO No. 672277)
  liz.kelly@lockelord.com
LOCKE LORD LLP
111 Huntington Avenue
Boston, MA 02199
617.230.0100

## CERTIFICATE OF SERVICE

I certify that a true copy of this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 19, 2024.

*/s/ Ishan K. Bhabha*
Ishan K. Bhabha