# United States Court of Appeals
## For the First Circuit

No. 24-1800

STANDWITHUS CENTER FOR LEGAL JUSTICE; KATERINA BOUKIN; MARILYN MEYERS,

Plaintiffs - Appellants,

v.

MASSACHUSETTS INSTITUTE OF TECHNOLOGY,

Defendant - Appellee.

Before

Barron, Chief Judge,*
Kayatta, Gelpí, Montecalvo, Rikelman,
Aframe, Dunlap, Circuit Judges, and Smith, District Judge.**

**ORDER OF COURT**

Entered: January 21, 2026

The petition for rehearing having been denied by the panel of judges who decided the case, and the petition for rehearing en banc having been submitted to the active judges of this court and a majority of the judges not having voted that the case be heard en banc, it is ordered that the petition for rehearing and the petition for rehearing en banc be denied.

**DUNLAP, Circuit Judge, concurring.** This case touches on the intersection of the First Amendment and Title VI, 42 U.S.C. § 2000d. As such, it presents difficult issues relating to the constitutional guarantee of freedom of speech and the scope of antidiscrimination laws -- and it does so in the fraught context of hot-button geopolitical controversies and the insidious reality of antisemitism. In my view, the panel went further than it ought to have gone to resolve the present dispute; nevertheless, I do not believe that the arguments raised justify rehearing en banc. See Fed. R. App. P. 40(b)(2), (c). I write separately to briefly note my concerns and rationale for denying rehearing.

As the panel rightly acknowledges, antisemitism has a "sordid history." StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech., 158 F.4th 1, 16 (1st Cir. 2025). This history is also,

---

* Chief Judge Barron is recused and did not participate in the consideration of this matter.
** Of the District of Rhode Island, sitting by designation.

unfortunately, a long one; indeed, it necessitated emphatic rejection by our first President. See Letter from George Washington to the Hebrew Congregation in Newport, R.I. (Aug. 18, 1790), in 6 Papers of George Washington 284, 285 (D. Twohig ed. 1996) ("May the Children of the Stock of Abraham, who dwell in this land, continue to merit and enjoy the good will of the other Inhabitants; while every one shall sit in safety under his own vine and figtree, and there shall be none to make him afraid."). As recent cases attest, President Washington's expressed opinion remains to some degree an aspiration -- perhaps increasingly so. See Gartenberg v. Cooper Union for the Advancement of Sci. & Art, 765 F. Supp. 3d 245 (S.D.N.Y. 2025) (denying motion to dismiss Title VI claims based on antisemitic conduct); Kestenbaum v. President and Fellows of Harvard Coll., 743 F. Supp. 3d 297 (D. Mass. 2024) (same).

      The challenge here is that antidiscrimination law, of necessity, only provides a partial remedy for antisemitism because of our concomitant dedication to freedom of speech. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The First Amendment, however, prohibits government restrictions on speech based on its message, ideas, subject matter, or content, Nat'l Inst. of Fam. & Life Advocs. v. Becerra, 585 U.S. 755, 766 (2018), and provides "special protection" to speech relating to matters of public concern -- even if it is outrageous, Snyder v. Phelps, 562 U.S. 443, 458 (2011). Title VI must therefore be applied with care for the constitutional problems that would arise if it were construed to suppress political speech. Cf. Honeyfund.com Inc. v. Governor, 94 F.4th 1272, 1282 (11th Cir. 2024); Saxe v. State Coll. Area Sch. Dist., 240 F.3d 200, 206 (2001); DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 596 (5th Cir. 1995).

      The panel addressed this tension by, first, concluding that Title VI does not require a university to "quash protected speech," and, second, concluding that the protesters' actions "did not render their speech antisemitic, much less unprotected." StandWithUs, 158 F.4th at 12. As to the first conclusion, the panel affirmed that speech on matters of public concern is specially protected under the First Amendment, including on college campuses. Id. at 12–15. The panel reached the latter conclusion to avoid determining whether racist speech can be punished under Title VI without violating the First Amendment. Id. at 15–16. I have some concerns with the panel's approach.

      As a preliminary matter, I note that the panel opinion does not lay out a comprehensive framework for resolving the tension between the First Amendment and Title VI, and, consequently, leaves open some important questions. A critical threshold question here is whether protected speech must be categorically exempted from Title VI, such that only conduct or speech not protected by the First Amendment could give rise to liability under that provision. Plaintiffs conceded on appeal that the answer to this question is "yes," consistent with the panel's observations about the scope of protection for free speech under the First Amendment. Id. at 12–15. The answer to this threshold question, however, does not resolve an important subsidiary question: Can speech that is otherwise protected by the First Amendment nevertheless support a claim under Title VI as evidence of animus (as opposed to evidence of an objectively hostile education environment)? See Saxe, 240 F.3d at 208. The panel opinion does not squarely address this question. In my view, the nuanced analysis set out by Judge Cronan in Gartenberg, 765 F.

2

Supp. 3d at 259–67, has much to recommend it as a potential means for resolving the constitutional issues embedded in the Title VI inquiry -- including as to this subsidiary question.[1] The best method of harmonizing the tension between the First Amendment and Title VI has not been well developed in briefing here, however, as Plaintiffs' arguments focused on the contention that racist speech is itself actionable under Title VI because it falls outside First Amendment protections. StandWithUs, 158 F.4th at 15–16. Because I read the panel's decision as sufficiently open-ended to allow our case law to continue developing and because Plaintiffs did not squarely advance Gartenberg's analytical approach, I do not think that rehearing en banc is warranted to address the issue further.

These observations lead me to my central concern, which relates to the panel's determination that the speech alleged in this case was not even plausibly antisemitic. By reaching this determination, the panel avoided answering Plaintiffs' contention that racist speech may give rise to liability under Title VI notwithstanding the First Amendment. StandWithUs, 158 F.4th at 15–19. I think Plaintiffs' framing led the panel to reach a dubious conclusion.

Under the familiar Rule 12(b)(6) standard, we must accept all factual allegations in a complaint as true for purposes of a motion to dismiss for failure to state a claim, and must draw all reasonable inferences in the Plaintiffs' favor. Douglas v. Hirshon, 63 F.4th 49, 54–55 (1st Cir. 2023). Vague or conclusory allegations will not suffice to state a claim that is plausible on its face. SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010). Nevertheless, as long as the allegations are plausible, even if not the most plausible of the possible alternatives, the complaint must survive a motion to dismiss. Evergreen Partnering Grp., Inc. v. Pactiv Corp., 720 F.3d 33, 45 (1st Cir. 2013). In my view, the complaint supports a plausible inference of antisemitism.

The panel acknowledges the existence of an "ongoing debate as to the relationship between anti-Zionism and antisemitism -- debate that our constitutional scheme resolves through discourse, not judicial fiat." StandWithUs, 158 F.4th at 17. But even as it makes this statement, the panel seems to impose just such a resolution by concluding that statements such as "Palestine will be free, from the river to the Sea!" and "There is only one solution! Intifada revolution!" were not -- at least in the context of the facts alleged -- antisemitic. Id. at 6, 19. But I find it at least plausible

---

[1] In Gartenberg, the court acknowledged both the central importance of speech on matters of public concern as well as the government interest in eliminating discriminatory harassment. 765 F. Supp. 3d at 262–63. The court concluded that Title VI generally does not "reach instances of pure speech on matters of public concern." Id. at 267; see id. at 265 (observing that "speech 'on a matter of public concern, directed to the college community,' will generally fail to constitute unlawful harassment" when expressed through "generally accepted methods of communication," but that a different result might obtain where, for example, there is "targeted, personal harassment aimed at a particular person" (quoting Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist., 605 F.3d 703, 710 (9th Cir. 2010)). The court also concluded, however, that speech might be relevant to determining whether actionable harassment has occurred by illuminating the actor's motivation. Id. at 267. Utilizing that framework, Judge Cronan first considered the alleged speech in determining whether the plaintiff had plausibly alleged discriminatory motive, and then considered whether the plaintiff had adequately alleged a hostile educational environment based on actions not protected under the First Amendment. Id. at 267–74.

that, when made in the immediate aftermath of "the deadliest massacre of Jews since the Holocaust in a manner that reasonably appears to celebrate and glorify that same violence," such phrases support an "inference of animus towards Jews." Gartenberg, 765 F. Supp. 3d at 269. At the very least, Plaintiffs should have been afforded the opportunity to prove whether such an inference of animus could be sustained, particularly given that -- as the panel acknowledges -- there were other incidents of antisemitism on campus, see, e.g., StandWithUs, 158 F.4th at 7–8, 20–21, that might also support the conclusion that the statements were something other than altruistic political opinions, see Gartenberg, 765 F. Supp. 3d at 269–70 (finding that, although the speech was not necessarily antisemitic, the speech when taken in context at least plausibly supported the theory that animus toward Jews was a motivating factor); Stephen E. Sachs, Zionism and Title VI, 139 Harv. L. Rev. Forum 50, 64–72 (2025).[2]

A simpler approach beckoned. The trial court below did not reach these issues, but instead resolved the case based on its conclusion that MIT did not act with deliberate indifference toward any harassment proscribed by Title VI. StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech., 742 F. Supp. 3d 133 (D. Mass. 2024). On appeal, the panel agreed with this conclusion. StandWithUs, 158 F.4th at 22–24. If the panel had grounded the opinion solely on this rationale, it would have remained on surer footing. There is certainly room for disagreement over the adequacy of the response by the Massachusetts Institute of Technology to the alleged harassment of Jews on campus; however, as acknowledged in Gartenberg, "the need to avoid a collision between Title VI and the First Amendment counsels in favor of an even more limited application of the already strict deliberate indifference standard." 765 F. Supp. 3d at 266. In this case, at least some efforts by MIT's administration -- efforts that will likely distinguish this case from others that may arise in the future -- undercut a finding of deliberate indifference. In my view, the panel should have chosen the same route as the trial court and resolved the case solely on this narrower ground. See United States v. Tsarnaev, 96 F.4th 441, 446 (1st Cir. 2024) ("[I]f it is not necessary to decide more, it is necessary not to decide more." (quoting PDK Lab'ys Inc. v. U.S. DEA, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in judgment)).

Nevertheless, I conclude that the panel's parsimonious and ultimately unnecessary application of the Rule 12(b)(6) standard in assessing the alleged animus of the protesters does not justify rehearing en banc. This case is likely limited to the unique facts as pled; indeed, the panel itself noted that different facts may well justify a different conclusion. See StandWithUs, 158 F.4th at 17 (citing Gartenberg, 765 F. Supp. 3d at 269). Granting rehearing en banc thus is not the most appropriate mechanism for addressing these issues. See Fed. R. App. P. 40(b)(2), (c).

This conclusion is further supported by the framing of this case for purposes of Plaintiffs' petition for rehearing en banc. Plaintiffs focus primarily on a purported conflict between this case

---

[2] Some facts supporting Plaintiffs' contentions regarding the protestors' animus include the invitation extended by student groups to a speaker who allegedly proclaimed "Come on settlers, we will slaughter you. . . . What Hitler did to you was a joke," StandWithUs, 158 F.4th at 8; the protestors' decision to set up camp adjacent to MIT Hillel, id.; Plaintiff Boukin's exclusion from Lobby 7 and the Kresge Lawn on account of her being Jewish, id. at 20; and another instance of a visibly Jewish student being heckled, id. By deconstructing the events and looking at them individually, rather than as a whole, the panel may have missed the forest for the trees.

4

and <u>Healy</u> v. <u>James</u>, 408 U.S. 169 (1972). That case, however, is not directly on point, as it addressed, in dicta, universities' ability to constrain disruptive <u>conduct</u>, and did not assess the interplay between speech and Title VI that is present here. See <u>id.</u> at 189. Plaintiffs also assert an alleged conflict between this case, on the one hand, and <u>Zeno</u> v. <u>Pines Plains Cent. Sch. Dist.</u>, 702 F.3d 655 (2d Cir. 2012), and <u>Feminist Majority Found.</u> v. <u>Hurley</u>, 911 F.3d 674 (4th Cir. 2018), on the other. Those cases are factually distinguishable, much as this case will be from cases likely to arise in the future. Finally, Plaintiffs argue that the panel's opinion conflicts with <u>Oncale</u> v. <u>Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75 (1998), by focusing on the intent of the protestors instead of the objective effect of the alleged harassment on the plaintiffs. But <u>Oncale</u> does not suggest that a plaintiff need not demonstrate that a harasser is motivated by hostility to a protected class. See <u>id.</u> at 80. Rather, it is the severity of the harassment that must be judged from the perspective of a reasonable person in the plaintiff's position. See <u>id.</u> at 81. I do not read the panel's opinion to contradict these principles.

For these reasons, I concur in the denial of rehearing en banc.

By the Court:

Anastasia Dubrovsky, Clerk

cc: Hon. Richard G. Stearns
Robert Farrell, Clerk, United States District Court for the District of Massachusetts
Marlene Jaye Goldenberg
Melissa S. Weiner
Glenn Danas
Ashley Boulton
Daryl J. Lapp
Elizabeth Howar Kelly
Ishan Kharshedji Bhabha
Lauren J. Hartz
Kellen Sean Dwyer
Edward M. Wenger
Mark Pinkert
Nathan Jeremiah Moelker
Olivia F. Summers
Jordan A. Sekulow